OPINION OF THE COURT
Moskowitz, J.
While we agree that reverse false claims are viable under the New York False Claims Act (State Finance Law § 187 et seq.) (NYFCA), we do not agree that plaintiff has stated one. We therefore reverse and dismiss the amended complaint as against defendant Utica First Insurance Company (Utica).
Defendant Utica is an insurance company that issued “artisan policies” to defendant contractors and others. It is undisputed that artisan policies provide coverage for small contractors, such as carpenters, plumbers and roofers. Artisan policies do not generally cover activities on commercial construction projects, such as excavation, underpinning, new concrete piers or *69 additions. According to plaintiffs, artisan policies also do not cover the claims of third parties, such as plaintiffs, who are the owner and manager of two properties that sustained damage as the result of defendant contractors’ work on adjacent buildings.
In New York City, general commercial construction activities require permits from the New York City Department of Buildings (DOB). It is undisputed that, as of February 2009, DOB required contractors performing this type of construction to have general liability insurance meeting specific coverage requirements. Artisan policies do not meet those requirements. DOB charges contractors a permit fee based on the total cost of a job. The total cost of the job includes the premium for insurance coverage.
Because artisan policies are more limited in their coverage, they are significantly less expensive than insurance for general construction work. Thus, according to plaintiffs, “to reduce their insurance costs, Defendant Contractors preferred these Artisan Policies, even if they did not cover the claims of third parties.” Because DOB calculated the price of the construction permit on the total cost for the job, including insurance premiums, the lower cost for the artisan policy had the added benefit of reducing the permit fee. Plaintiffs claim that Utica issued and renewed artisan policies to defendant contractors knowing that these contractors used Utica’s policies to register with the DOB and receive permits to work. Specifically, plaintiffs claim, Utica issued Association for Cooperative Research and Development (ACORD) Form 25 certificates of insurance to defendant contractors. This form can accompany almost any insurance policy and has approval from the Department of Insurance. An ACORD form is quite limited. It only states the level and type of coverage. There is nothing on the form about compliance with DOB rules and plaintiffs do not allege that the ACORD 25 form itself was false.[1] Instead, plaintiffs take issue with the way defendant contractors used the ACORD 25 form to obtain DOB permits. Because the form describes the artisan *70 policy as providing “general liability” coverage, as opposed to automobile liability or workers’ compensation coverage (the only two other types of coverage the ACORD form in the record lists), plaintiffs claim defendant contractors would use the ACORD form as part of their application to show proof of adequate general liability insurance. However, it is undisputed that artisan policies do provide a type of general liability coverage. Moreover, plaintiffs admit that “[t]hese ACORD 25 forms, issued by Utica to the Contractors, are all identical, do not reference the specific policy used by the insurer, nor do they state whether the Contractors are in compliance with all the Codes and Rules.”[2]
According to the amended complaint, plaintiff Seiden is the president of Rockwell Development Corp. Rockwell owns a residential building adjacent to a building where Oriental Construction, one of the defendant contractors, was performing general construction work. The building allegedly sustained damage as a result of Oriental’s construction activities. Also, a building that Seiden’s mother owned became damaged during defendant contractor Kessler’s work on adjacent property. Both Kessler and Oriental maintained artisan policies with Utica and both had used those policies to obtain a DOB permit. Plaintiff Groppi is the property manager for Rockwell. Although he attempted to report to Utica about the damage that Oriental’s activities had caused, he discovered that the artisan policy did not cover any earth moving work, including the excavation and underpinning work that had caused damage to Seiden’s building. Groppi received a similar response with respect to the other property, but Utica nevertheless sent an inspector to investigate the site. Plaintiffs reported to DOB, as well as the District Attorney’s Office and the Department of Insurance, that contractors were using Utica’s artisan policies to obtain permits from DOB. As of February 15, 2010, DOB no longer accepts artisan policies when licensing the type of work that Oriental and Kessler performed.
Plaintiffs commenced this qui tarn action under section 189 (1) (g) of the NYFCA in 2009. As required under section 190, *71 plaintiffs gave the State of New York notice and opportunity to intervene. However, on January 6, 2010, the Attorney General for the State of New York declined to intervene and plaintiffs proceeded with this action on their own.
The NYFCA was enacted as part of a federal incentive to limit Medicaid fraud. It is not restricted to Medicaid fraud, however, but applies to any sort of looting of the public purse (see De Santis and Froehlich, False Claims Acts, City, State and Federal: Enlisting Citizens to Protect the Fisc, NY St BA Gov’t, Law & Pub Pol’y J, at 64 [Winter 2011]). The public funds that plaintiffs claim Utica looted were the fees that DOB would have received had the contractors paid the larger premium inherent in the purchase of general liability insurance that would have covered the construction job. Plaintiffs seek to recover these fees from Utica on behalf of DOB and hope to receive a portion of the recovery pursuant to NYFCA § 190 (6) (b). Plaintiffs also seek to recover attorneys’ fees and expenses and “such other relief as the Court deems just and proper, or that is necessary to make Relators whole,” but do not explain what they mean by “to make [r]elators whole” or whether the NYFCA provides for this recovery. There is nothing in the record to indicate whether plaintiffs have sued the owners of the neighboring properties for the property damage plaintiffs sustained.
The typical false claim involves the state paying out money because of a false claim. A “reverse false claim” occurs when someone uses a false record to avoid an obligation to pay the government (United States v Q Intl. Courier, Inc., 131 F3d 770, 773 [8th Cir 1997]). The NYFCA expressly provides recovery for reverse false claims in section 189 (1) (g) against any person who “knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state or a local government” (emphasis added).
The NYFCA follows the federal False Claims Act (31 USC § 3729 et seq.) (FCA) and therefore it is appropriate to look toward federal law when interpreting the New York act (see State of N.Y. ex rel. Jamaica Hosp. Med. Ctr., Inc. v UnitedHealth Group, Inc., 84 AD3d 442, 443 [2011]). To allege a reverse false claim, a plaintiff must state facts tending to show:
“(1) that the defendant made, used, or caused to be used a record or statement to conceal, avoid, or decrease an obligation to [the government]; (2) that *72 the statement or record was false; (3) that the defendant knew that the statement or record was false; and (4) that [the state] suffered damages as a result” (United States v Raymond & Whitcomb Co., 53 F Supp 2d 436, 444-445 [SD NY 1999] [internal quotation marks omitted]).
Plaintiff must state a reverse false claim with particularity (see United States, ex rel. Joseph Piacentile v Sanofi Synthelabo, Inc., 2010 WL 5466043, *8, 2010 US Dist LEXIS 137895, *21 [D NJ, Dec. 30, 2010, No. 05-2927 (KSH)] [“a relator must provide particular details ‘of a scheme to submit false claims’ ”]).
Given that the ACORD form does not contain anything false or misleading on its face, plaintiffs resort to the argument that Utica somehow deliberately marketed the artisan policy to contractors as a means of satisfying the New York City general contractor licensing requirements. However, plaintiffs have provided no factual allegations to support this theory. The sole allegation in the complaint regarding a “marketing scheme” is the conclusory statement that “Utica’s cooperative network of insurance brokers knowingly targeted and distributed their deficient Artisan policy to Defendant Contractors within the City.” This is insufficient for the purposes of stating a reverse false claim. There are no allegations that Utica or its representatives made statements to contractors that the artisan policies were sufficient to meet DOB licensing requirements. These omissions are “especially glaring” given that Utica is a secondary actor who not only did not submit the false claim directly, but also supplied a document to the primary actor that was perfectly legal (see United States ex rel. Pervez v Beth Israel Med. Ctr., 736 F Supp 2d 804, 814-815 [SD NY 2010] [dismissing federal FCA claim against accountants and noting that the failure to plead facts with particularity was “especially glaring in the unusual context of FCA claims brought against a secondary actor — an outside auditor — rather than the provider that actually submitted the allegedly false claims”]).
As a fallback position, plaintiffs argue that Utica must have known that defendant contractors were misrepresenting its artisan policies to DOB because “Utica received claims against these Artisan policies that were in excess of the policies’ coverage.” This is a non sequitur. There is nothing improper about defendant contractors’ possession of an artisan policy, provided that the artisan policy was not the only coverage on which they relied in applying for their license. Moreover, an insurance *73 company’s receipt of a notice of claim on an inapplicable policy does not raise an inference that the insurance company knows that fraud is involved, much less that it intends the fraud, particularly where, as here, the insured could have easily maintained another insurance policy.
Plaintiffs also contend that the artisan policies were useless. This is incorrect. These policies covered the work of small contractors. When defendant contractors applied for their policies, they did not have to disclose to Utica what activities they needed the policy to cover. And, even if they did disclose, it was not Utica’s responsibility to advise defendant contractors as to what insurance would be adequate for particular purposes (see Garnerville Holding Co. v Kaye Ins. Assoc., 309 AD2d 541 [2003], lv denied 2 NY3d 705 [2004] [dismissing complaint against the defendant insurance broker because the broker had no duty to advise plaintiff “as to the amount of coverage it would be prudent to obtain”]). Thus, the allegations do not show that, even if Utica knew of the contractors’ deceptions, Utica would have any obligation to do anything about those deceptions (see also Piacentile, 2010 WL 5466043, *9, 2010 US Dist LEXIS 137895, *25-26 [allegations concerning reverse false claim inadequate where the defendants did not submit the false claim directly and the plaintiff failed to allege “any existing obligation on the part of the defendants”]). Plaintiffs here in effect seek to require Utica to become the risk manager for defendant contractors, a role Utica does not, and should not, have.
Plaintiffs claim that “Utica knowingly caused the submission of these false records by creating ACORD 25 forms that described the Artisan policies simply as providing ‘commercial general liability’ coverage.” There are several problems with this statement. First, “[t]he creation of general circumstances leading to the submission of false claims are insufficient to state a FCA violation” (see United States ex rel. Camillo v Ancilla Sys., Inc., 2005 WL 1669833, *4, 2005 US Dist LEXIS 14638, *12 [SD Ill, July 18, 2005, No. 03-CV-0024-DRH]). Moreover, Utica did not create the ACORD 25 form. As plaintiffs admit in their brief, the ACORD, of which Utica is a member, issued the form for use in the insurance industry generally. In addition, the Department of Insurance approved the form. Finally, there is nothing false or misleading about describing the artisan policy as “commercial general liability” coverage. In fact, an artisan policy does provide this type of insurance and plaintiffs admit as much in their amended complaint.
*74 United States ex rel. Schmidt v Zimmer, Inc. (386 F3d 235 [3d Cir 2004]) is not to the contrary. Defendant Zimmer was a manufacturer and distributor of orthopedic implants that allegedly gave rewards and bonuses if a customer (medical providers) purchased a certain amount of product. When the providers submitted claims for Medicare reimbursement for these implants, they allegedly did not disclose the money they received back from defendant supplier (id. at 237-238). This arrangement allegedly violated the Federal Anti-Kickback Act (42 USC § 1320a-7b) and therefore provided the threshold for a claim under the federal FCA (see id. at 244-245; United States ex rel. Westmoreland v Amgen, Inc., 812 F Supp 2d 39, 54 [D Mass 2011] [“courts, without exception, agree that compliance with the Anti-Kickback Statute is a precondition of Medicare payment, such that liability under the False Claims Act can be predicated on a violation of the Anti-Kickback Statute”]; In re Pharmaceutical Indus. Average Wholesale Price Litig., 491 F Supp 2d 12, 18 [D Mass 2007] [“Medicare program requires providers to affirmatively certify that they have complied with the Anti-Kickback Statute; failure to comply with the kickback laws, therefore, is, in and of itself, a false statement to the government”]; United States ex rel. Kneepkins v Gambro Healthcare, Inc., 115 F Supp 2d 35, 43 [D Mass 2000] [holding that alleged violations of the Anti-Kickback Statute were sufficient to state a claim under the False Claims Act, despite no express certification of compliance with applicable law]). Here, Utica’s sale of policies to defendant contractors was legal, and nothing on the ACORD form from Utica was false. In contrast, the certification in Zimmer actually contained false information.
Simply put, selling artisan policies to defendant contractors and providing them with the ACORD form that listed the artisan policies as a “commercial general liability” type of policy is insufficient to allege liability under the NYFCA.
Accordingly, the order of the Supreme Court, New York County (Joan A. Madden, J), entered on or about April 12, 2011, which denied defendant Utica’s motion to dismiss the amended complaint as against it, should be reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment dismissing the amended complaint as against defendant Utica.
Saxe, J.P., Sweeny, Manzanet-Daniels and Roman, JJ., concur with Moskowitz, J.
Order, Supreme Court, New York County, entered on or about April 12, 2011, reversed, on the law, without costs, and the mo *75 tion granted. The Clerk is directed to enter judgment dismissing the amended complaint as against defendant Utica.

. The contention that there were misrepresentations within the four corners of the ACORD form was central to plaintiffs’ opposition to Utica’s motion to dismiss (see reply brief at 4-5) and was central to the trial court’s ruling: “Utica . . . prepared ACORD 25 certificates that falsely represented that the Artisan policies complied with the Codes and the Rules.” However, plaintiffs have disavowed this argument on appeal by stating that “[n]owhere in their Amended complaint do Plaintiffs assert that the ACORD 25 insurance certificates issued by Utica state that the Utica Artisan policies satisfy DOB insurance requirements.”

. Plaintiffs allege that Rules of City of New York Department of Buildings (1 RCNY) § 104-02 (a) requires contractors to provide the DOB with a certificate of insurance on an ACORD 25 form that expressly represents that the general commercial liability insurance the contractor maintains is in compliance with the Codes and Rules. However, it was not until February 20, 2009 that the City enacted 1 RCNY 104-02, while Utica developed its artisan policy in 1999 and issued the only artisan policy the record on appeal contains on September 24, 2008. It is unclear from the record whether contractors need to supply the actual policy to DOB when applying for a permit.